# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| EDNA RAMSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case number 4:09cv1754 TCM |
| ) | |
| TIMOTHY CONNER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the motion of the six defendants for summary judgment on the two-count amended complaint of plaintiff, Edna Ramsey. [Doc. 37] In response, Plaintiff agrees that she has no cause of action against defendants Douglas E. Lebert, D'Andre Montgomery, Frank Mininni, and Michael Eaton. These defendants will be dismissed. Plaintiff also agrees that she has no cause of action for conspiracy to violate her constitutional rights, for a Fourteenth Amendment violation, or against defendant City of Normandy (Normandy) for unconstitutional policies, customs, practices, or usages. These claims also will be dismissed. Plaintiff maintains, however, that she has a claim against Timothy Conner for excessive force and against Normandy for failure to train, supervise, or control. Consequently, only those factual allegations and issues relevant to the remaining claims are discussed below.

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

**Background**

At approximately 9:00 in the evening of July 11, 2008, Plaintiff was riding in the front seat of a pick-up truck driven by her husband, Arnett Ramsey (Ramsey). (Defs. Stip.[2] ¶¶ 3, 7, 9.) A friend, Jimmy Collins, was in the back seat. (Id. ¶ 8.) The truck had a drive-away license plate. (Id. ¶ 4.) A drive-away license plate "is only proper when used by an automobile dealership to transport vehicle inventory from one location to another." (Id. ¶ 5.) Ramsey had purchased the truck to replace one that had been stolen. (Id. ¶ 12.) This new truck was not yet licensed in his name, nor did he have the vehicle title. (Id. ¶ 14.) He did have a bill of sale for the new truck. (Id. ¶ 15.)

Timothy Conner (Conner), a Normandy police officer, saw the Ramseys' truck with the drive-away license plate and initiated a traffic stop. (Id. ¶¶ 4, 6.) He asked Ramsey for his driver's license and proof of insurance. (Id. ¶¶ 10, 16.) The insurance card produced by Ramsey was for the stolen truck. (Id. ¶¶ 15, 17.) Ramsey did not explain this to Conner, nor did he refer at all to the truck he had earlier reported stolen. (Id. ¶ 18; Ramsey Dep., Defs. Ex. D, at 22.) Conner called police dispatch and learned that the truck identified in the insurance card was a different truck than the one being driven by Ramsey, albeit similar in body style and color, and had been reported stolen. (Defs. Stip. ¶¶ 19, 20.) Conner called for back-up; Normandy police officers Michael Eaton and D'Andre Montgomery responded. (Id. ¶¶ 20, 21.)

---

[2]"Stip." refers to those statements of material facts that are submitted by one party and admitted or not denied by the opposing party.

Conner asked Ramsey to get out of the truck. (Id. ¶ 22.) He did, and was then handcuffed by Conner. (Id.)

Plaintiff was asked to get out of the truck. (Id. ¶ 24.) She did. (Id. ¶ 26.) Conner then put her hands behind her back and handcuffed her. (Id. ¶¶ 26, 28, 30.)

Conner testified in his deposition that Ramsey, Collins, and Plaintiff did not threaten him in any way.[3] (Conner Dep. at 50.) He handcuffed them only because doing so was proper procedure when investigating a felony, i.e., a stolen vehicle. (Id. at 51.)

Plaintiff testified in her deposition that the handcuffs were "very tight" and she felt pain as soon as they were applied. (Pl. Dep., Pl. Ex. 2, at 54.) In response to Conner's directive, she knelt on the ground. (Id. at 58, 60, 63.) She asked Conner to adjust the handcuffs because her shoulders were hurting. (Id. at 58, 59-60.) After she was placed in the police car, she asked him again to "do something" with the handcuffs because her arms were becoming numb and her shoulders "were really getting painful." (Id. at 67, 68.) Conner did not respond to either request. (Id. at 68.) He testified in his deposition that he did not know Plaintiff had been injured. (Conner Dep., Defs. Ex. B, at 55.)

After Ramsey explained to Conner about having mistakenly given him the paperwork for the truck he had reported stolen and Conner had confirmed this by an at-the-scene investigation, Plaintiff's handcuffs were taken off. (Defs. Stip. ¶ 42-44.) Plaintiff, Ramsey, and Collins returned to the truck and drove off. (Id. ¶ 47.)

---

[3]Conner was six foot three inches tall; Plaintiff was five feet tall. (Conner Dep. at 51, 63.) At the relevant time, Plaintiff was 54 years old.

Normandy "does not have a specific general order regarding the manner in which to apply handcuffs." (Id. ¶ 50.) Regardless, Normandy police officers apply handcuffs as they were taught in the police academy and other relevant classes. (Id.) This procedure requires that a suspect's hands are cuffed behind their back with the wrists facing inwards and the palms of the hands facing upwards. (Id. ¶ 51.) Conner testified in his deposition that he does a "finger check," slipping a finger between the handcuff and wrist, if a suspect complains that the handcuffs are too tight. (Conner Dep. at 13.) If he concluded after this check that the handcuffs were not too tight, he would not loosen them. (Id.)

Three years before the events at issue, Plaintiff underwent an anterior cervical discectomy of C6-7 and an anterior cervical fusion of C6-7. (Defs. Stip. ¶ 87.) Two months before the events, Plaintiff was diagnosed with cervical stenosis, neck pain, radicular pain, and thoracic spine pain. (Id. ¶ 88-89.) She told her doctor that, in addition to worsening neck and back pain, she was having some left shoulder pain. (Id. ¶ 87.)

The evening after the events, Plaintiff went to the emergency room at Barnes Jewish Hospital for complaints of upper back pain, bilateral shoulder pain, and increased numbness in her left arm. (Defs. Ex. N at 1, 6.) The triage notes include a reference to "[m]istakenly hand cuffed by police last night, now complaining of increased numbness to left arm." (Id. at 6.) "Patient states that she complained to the police about the tightness of the handcuffs, but was ignored. Has been taking ibuprofen for pain without relief." (Id. at 7.) On examination, her strength in her right upper extremity was 5 out of 5 and in her left upper

extremity was 4 out of 5. (Id. at 10.) She was discharged with a prescription for oxycodone/acetaminophen and instructions to follow up with her physician. (Id. at 10, 12.)

Five months later, on December 4, Plaintiff had left shoulder arthroscopy; on December 15, she began a three-month course of physical therapy for a rotator cuff . (Defs. Stip. ¶ 93; Pl. Ex. 6 at 29-32.) She took a leave of absence during this time. (Pl. Dep. at 83.) Since February 2009, she has worked full-time. (Id.) Her orthopedist has opined that she will not require further treatment for her left shoulder. (Pl. Ex. 5.) In her amended complaint, Plaintiff describes her injuries as "grievous bodily harm." (Am. Compl. ¶ 26.)

Conner argues that he is entitled to summary judgment because (a) his use of force when handcuffing Plaintiff was objectively reasonable and was not unconstitutional, and (b) his act of handcuffing her did not violate a clearly established constitutional right. Normandy argues that Plaintiff's allegations of a failure to train, supervise, and control do not state a claim under 42 U.S.C. § 1983.

## Discussion

"Summary judgment is . . . proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" **Torgerson v. City of Rochester**, 605 F.3d 584, 594 (8th Cir. 2010) (quoting Fed.R.Civ.P. 56(c)(2)). "The movant 'bears the initial responsibility of informing the . . . [C]ourt of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence

of a genuine issue of material fact.'" **Id.** (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (last two alterations in original). "If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that 'set out specific facts showing a genuine issue for trial.'" **Id.** (quoting Fed.R.Civ.P. 56(e)(2)). And "[i]n determining whether summary judgment is appropriate, [the] [C]ourt must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant." **Id.**

<u>Plaintiff's Claims Against Conner.</u> A claim of excessive force arising from a seizure is actionable under 42 U.S.C. § 1983 and is analyzed under the objective reasonableness standard of the Fourth Amendment. **Graham v. Connor**, 490 U.S. 386, 395 (1989); **Cook v. City of Bella Villa**, 582 F.3d 840, 849 (8th Cir. 2009). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." **Graham**, 490 U.S. at 396 (internal punctuation and citations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." **Id.** Consequently, the particular facts of the case must be examined, including whether the suspect poses a danger to the officer's or others' safety, whether the suspect is resisting arrest or attempting to flee, the severity of the crime at issue, and the injuries sustained by suspect. **Id.**; **Cook**, 582 F.3d at 849, 850; **Henderson v. Munn**, 439 F.3d 497, 502 (8th Cir. 2006); **Crumley v. City of St. Paul, Minn.**, 324 F.3d

1003, 1007 (8th Cir. 2003). When conducting this examination, the Court must be mindful that "[n]ot every push or shove, even it may . . . seem unnecessary in the peace of [the Court's] chambers, violates the Fourth Amendment." **Graham**, 490 U.S. at 396 (internal quotations omitted). Rather, "the reasonableness of a particular use of force" is to be examined "'from the perspective of a reasonable officer on the scene . . . .'" **Henderson**, 439 F.3d at 502 (quoting Graham, 490 U.S. at 396).

There is no allegation that Plaintiff or the other two occupants of the truck posed a threat to Conner. Cf. **Cook**, 582 F.3d at 850 (use of taser on driver's husband was not excessive force when police officer was alone on highway at midnight, attempting to arrest an uncooperative driver, being hysterically shouted at by husband and another passenger, and being approached by husband after having told husband to stay in the car) with **Henderson**, 439 F.3d at 503 (use of pepper spray on man who was handcuffed and pinned to ground presented jury question whether use was excessive force). Plaintiff was at least one foot shorter than Conner and was 54 years old at the time. Each of the three occupants complied with Conner's instructions to get out of the truck without any aggressive action or words and were handcuffed without resistance. See **Kopec v. Tate**, 361 F.3d 772, 777 (3rd Cir. 2004) (finding that claim of excessive force presented jury question when officer accused of ignoring complaints that handcuffs were too tight "faced rather benign circumstances that hardly justified his failure to respond more promptly" to those complaints made by man accused of trespassing); **Turek v. Saluga**, 47 Fed.Appx. 746, 749 (6th Cir. 2002) (finding

that claim of excessive force by officer who allegedly failed to loosen handcuffs after suspect complained presented jury question based on, inter alia, suspect not having threatened officer or done anything violent and on officer not having been concerned for his personal safety); **Palmer v. Sanderson**, 9 F.3d 1433, 1436 (9th Cir. 1993) (finding that claim of excessive force presented jury question when, inter alia, suspect complied with all of officer's directives).

As noted above, however, another relevant consideration when examining a claim of excessive force is the extent of the injuries sustained as a result of the force used. "[A]llegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force." **Foster v. Metro. Airport Comm'n**, 914 F.2d 1076, 1082 (8th Cir. 1990); accord **Crumley**, 324 F.3d at 1008. Instead, "for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries." **Id.** In the instant case, there is evidence that Conner's use of handcuffs on Plaintiff resulted in more than minor injuries, specifically, in arthroscopic surgery and physical therapy for three months. Conner argues that the injuries must be permanent to support a claim of excessive force and that Plaintiff's injuries were not, as reflected by her return to work without restrictions and by her orthopedist's opinion that no further treatment was required for her shoulder. A return to work and a lack of need for further treatment do not render her alleged injuries minor. "[T]here is no requirement that an injury be permanent for it to be actionable." **Rohrbough v. Hall**,

4:07cv0996 ERW at 11 (D. E. Mo. Oct. 23, 2008). The evidence that Plaintiff required surgery and three months of physical therapy as a result of the handcuffs being too tight is sufficient to present a jury question of whether Conner used excessive force. See e.g. **Morrison v. Bd. of Trustees of Green Twp.**, 583 F.3d 394, 402, 403 (6th Cir. 2009) (claim of excessive force in handcuffing plaintiff presented jury question when there was a dispute whether officer responded to complaints by checking whether handcuffs were too tight and when plaintiff alleged injuries of bruising, skin marks, and pain); **Kopec**, 361 F.3d at 777 (allegations of nerve damage caused by too-tight handcuffs supported excessive force claim); **Palmer**, 9 F.3d at 1436 (finding excessive force claim presented jury question when plaintiff alleged that tight handcuffs caused pain and left bruises that lasted for several weeks). Cf **Crumley**, 324 F.3d at 1008 (finding no reasonable jury could find in favor of plaintiff on claim police officer used excessive force when plaintiff alleged only that tight handcuffs made one of her hands bleed and did not indicate that she suffered any *long-term* or permanent injury); **Miller v. Sanilac County**, 606 F.3d 240, 252 (6th Cir. 2010) (finding summary judgment properly granted to officer on claims of excessive force in handcuffing plaintiff when handcuffs were removed after plaintiff finally complained they were too tight – therefore, officer could not be said to have ignored his complaints – and record did not support claim that he lost color in his hands for at least a day after his arrest and had a continuing inability to use hands); **Tibbs v. City of Chicago**, 469 F.3d 661, 666 (7th Cir. 2006) (allegations of redness on wrists for less than two days by plaintiff who never sought

medical care for any injury caused by handcuffs did not present jury question on excessive force claim); **Gilles v. Davis**, 427 F.3d 197, 207 (3rd Cir. 2005) (summary judgment was properly granted in excessive force claim brought against officer by plaintiff who had not complained to that officer of handcuffs being too tight, who had no visible indicators of pain, and who never sought or received medical treatment for any injuries caused by handcuffs); **Gold v. City of Miami**, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (pain from handcuffs lasting twenty minutes and skin abrasions for which plaintiff did not seek medical treatment were minor injuries reflecting minimal force used when applying handcuffs); **Schmidt v. Louise Big Boy**, 2007 WL 858419, *9 (D. S.D. 2007) (granting summary judgment to officer on excessive force claims of plaintiff who presented no evidence of any injury caused by handcuffs that were too tight); **Van Houten v. Baughman**, 663 F. Supp. 887, 891 (C.D. Ill. 1987) (finding officer accused of excessive force was entitled to summary judgment when plaintiff had not complained to officer of handcuffs being too tight and could say, at best, that he had experienced "some pain" and still had "some numbness"). Moreover, the lack of a need for further treatment does not negate the possibility that Plaintiff continues to suffer from repercussions of any alleged injuries caused by the handcuffs, nor has Conner submitted any evidence of such lack. Cf. **Cook**, 582 F.3d at 851 (dismissing claim of excessive force when plaintiff expressly denied suffering from any effects of such force).

Conner argues that regardless of whether Plaintiff has adequately alleged a claim of excessive force, this right was not clearly established in June 2008 and, therefore, he is entitled to qualified immunity. The Court disagrees, as have other courts.

"Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." **Henderson**, 439 F.3d at 501 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Two questions must be answered when determining whether qualified immunity protects an official: "(1), whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." **Id.** at 501-02. The first question has been answered above. Accepting, as the Court must,[4] Plaintiff's allegations that she told Conner that the handcuffs were too tight and were causing her pain and that she suffered injuries as a result, her right to be free of such force was clearly established in 2008. See e.g. **Crumley**,

---

[4]Conner also argues that Plaintiff's assertions of an injury and how it occurred are unavailing because they are self-serving. Her account of what happened the night of July 11, 2008, is not self-serving simply because it supports her claim any more than his account is because it supports his defense. See **Henderson**, 439 F.3d at 499 n.2 (accepting as true plaintiff's account of facts where there were material inconsistencies with defendant's account). See also **Jenkins v. Winter**, 540 F.3d 742, 748 (8th Cir. 2008) ("Rule 56(e)(1) of the Federal Rules of Civil Procedure requires affidavits to be '*made on personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.'") (emphasis added).

324 F.3d at 1007-08 (discussing claim of Fourth Amendment violation caused by excessively tight handcuffs used in 1998 seizure); **Foster**, 914 F.2d at 1082 (discussing claim of Fourth Amendment violation caused by excessively tight handcuffs used in 1987 seizure). Also, in **Morrison**, 583 F.3d at 401, the Sixth Circuit held that the Fourth Amendment prohibition against unduly tight or excessive handcuffing during the course of a seizure was clearly established at least by October 2002. In **Kopec**, 361 F.3d at 778, the Third Circuit held that such right was clearly established at least in 2000.

Accordingly, for the foregoing reasons, Conner's motion for summary judgment on Plaintiff's claims of a Fourth Amendment violation caused by excessively tight handcuffs will be denied.

Plaintiff also seeks to hold Normandy liable for Conner's action on the basis of a failure to train, control, or supervise. See **Larkin v. St. Louis Housing Auth. Dev.** 355 F.3d 1114, 1117 (8th Cir. 2004) (municipality may be liable under § 1983 for a failure to train if the failure "rises to the level of 'deliberate indifference' to the rights of others"); **Liebe v. Norton**, 157 F.3d 574, 579 (8th Cir. 1998) (a municipality may be liable under § 1983 for a failure to supervise if such failure was deliberate indifference to the rights of others). For a failure to train or supervise to survive summary judgment, the plaintiff "must provide evidence that [the municipality] was on notice that its training procedures were inadequate and likely to result in violation of constitutional rights." **Larkin**, 355 F.3d at 1117 (interim quotations omitted). See also **Liebe**, 157 F.3d at 579 (failure to supervise claims requires

same analysis as failure to train claims). This argument overlooks the record. Conner testified that he checks handcuffs if a person claims they are too tight. Plaintiff alleges that she did complain and he did nothing. Conner counters that she did not complain. There is no evidence of a failure to train, control, or supervise. Thus, the conflict is in whether Plaintiff complained, not as to what Conner did on being made aware of any complaint. See **Id.** at 579-80 (finding that plaintiff failed to establish a submissible case of failure to train or supervise when there was no evidence of a causal link between county's policies designed to prevent inmate suicides and suicide at issue).

## **Conclusion**

Plaintiff having agreed[5] that she has no cause of action against defendants Douglas E. Lebert, D'Andre Montgomery, Frank Mininni, and Michael Eaton, these defendants will be dismissed. Having also agreed that she has no cause of action for conspiracy to violate her constitutional rights, for a Fourteenth Amendment violation, or against the City of Normandy for unconstitutional policies, customs, practices, or usages, these claims will also be dismissed. Having failed to establish a genuine issue of material fact as to whether the City of Normandy may held liable for a failure to train, control, or supervise, this claim will be dismissed.

---

[5]The Court appreciates the candor of Plaintiff's attorney in conceding the lack of a case against several defendants and on several theories. Such candor reflects well on his professional integrity.

Plaintiff has established a genuine issue of material fact as to whether Timothy Conner violated her Fourth Amendment rights by an excessive use of force.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment is **GRANTED** in part and **DENIED** in part as set forth above. [Doc. 37]

**IT IS FURTHER ORDERED** that Plaintiff's claims against the City of Normandy, Douglas E. Lebert, D'Andre Montgomery, Frank Mininni, and Michael Eaton are DISMISSED.

**IT IS FURTHER ORDERED** that Plaintiff's claims of conspiracy to violate her constitutional rights and for a Fourteenth Amendment violation are also DISMISSED. Her claims against Timothy Conner for excessive force remain pending.

**IT IS FINALLY ORDERED** that a status conference shall be held in this case on Monday, January 10, 2011, at 2:00 p.m. in chambers. Counsel shall be prepared to discuss a referral to alternate dispute resolution.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of January, 2011.